THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| **FRANKLIN GUN SHOP, INC.,** | : | |
| d/b/a Franklin's of Athens, Inc., | : | |
| a Georgia corporation, | : | |
| | : | |
| Petitioner/Plaintiff, | : | Civil Action |
| | : | No. 3:05-cv-87 (CAR) |
| v. | : | |
| | : | |
| **ALBERTO GONZALES, Attorney** | : | |
| **General of the United States,** | : | |
| **UNITED STATES DEPARTMENT** | : | |
| **OF JUSTICE, and THE BUREAU** | : | |
| **OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS, AND EXPLOSIVES,** | : | |
| | : | |
| Respondents/Defendants. | : | |
| | : | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

In this case, Petitioner Franklin Gun Shop, Inc., appeals the decision of the Attorney General of the United States, acting through the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), to revoke its license as a firearms dealer pursuant to the Gun Control Act, at 18 U.S.C. § 923(e). The parties have separately moved for summary judgment. Upon due consideration of the arguments of counsel, the evidence in the record, and the relevant legal authorities, the Court finds that there are no genuine issues of material fact and that the Respondents are entitled to judgment as a matter of law. Respondents acted within their authority in revoking Petitioner's license. Accordingly, Respondents' Motion for Summary Judgment (Doc. 16) is hereby **GRANTED**, and Petitioner's Motion for Summary Judgment (Doc. 29) is hereby **DENIED**.

1

**1.      Procedural Background**

Petitioner's license was revoked based on the results of an inspection conducted by agents of ATF in July of 2003. Following the inspection, the agents cited Petitioner for violations of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e). Specifically, Petitioner was cited for failure to record the acquisition of 3 firearms and the disposition of 677 firearms in its bound Acquisition and Disposition ("A&D") book. As a result of these violations, ATF issued a notice of revocation of license. Petitioner requested a hearing, and a hearing was convened on May 17, 2005. The hearing officer found that Petitioner had willfully failed to record the disposition of 677 firearms, but rejected the charge that Petitioner had failed to record the acquisition of 3 firearms. ATF's Director of Industry Operations adopted the hearing officer's recommendation, although he determined that the actual number of unrecorded dispositions was 563, rather than 677. Final notice of revocation was issued on September 22, 2005. Petitioner filed the present action on October 5, 2005. ATF has stayed the revocation of Petitioner's license pending the resolution of this case.

**2.      Standard of Review**

The standard for judicial review of a decision to revoke a firearms license is prescribed at 18 U.S.C. § 923(f)(3), which provides that an aggrieved party may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a *de novo* judicial review of such denial or revocation." The Court's *de novo* review is not limited to the administrative record presented to the ATF hearing officer, and in its review the Court "may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing." Id. If the Court, after such review, "decides that the Attorney General

was not authorized . . . to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." Id.

The Gun Control Act authorizes the Attorney General after notice and opportunity for hearing, to "revoke any license issued under this section if the holder of such license has *willfully* violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter." 18 U.S.C. § 923(e) (Emphasis added). The particular provision at issue in this case is Section 923(g)(1)(A), which provides that "[e]ach . . . licensed dealer shall maintain such records of . . . receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." The regulations for records of receipt, sale, or disposition of firearms by licensed dealers are codified at 27 C.F.R. § 478.125(e), which requires dealers to keep a bound A&D book with records of the receipt and disposition of all firearms.

The regulation prescribes a particular format for the bound book entries, with information as to the acquisition of the firearm on the left side of the ledger and information as to the disposition on the right side. For each firearm the record must show, among other things, the manufacturer, model, and serial number of the firearm, the date of acquisition, the name and address of the person from whom the firearm is acquired, the date of the disposition, the name of the party to whom the firearm is transferred, and the serial number of the Form 4473 completed at the time of the disposition.[1] An acquisition must be recorded in the bound book by the close of the next business day after the acquisition. A disposition must be recorded in the bound book within seven days of

---

[1] A separate regulation requires dealers to complete Form 4473 when a firearm is sold to a private buyer. The forms must be maintained in order of serial number. Form 4473 is not required when the gun is transferred to another licensed firearms dealer. 27 C.F.R. § 478.124.

3

the date of disposition. The Forms 4473 must be maintained separately in numerical order by serial number as identified in the bound book.

Petitioner challenges the decision of the Attorney General on two grounds. First, Petitioner contends that a substantial portion of the violations alleged by ATF are not supported by the record. Second, Petitioner contends that any violations it did commit were not willful. In the absence of willfullness, the Attorney General is not authorized to revoke a dealer's license. Upon review of the record, the Court finds that there is undisputed evidence to show that Petitioner did violate the requirements of Section 923 and the accompanying regulations, and that these violations were willful as that term is defined in the Eleventh Circuit.

**3.     Violations of Record-keeping Requirements**

Although there may be questions about the validity of some of the violations cited by ATF in the July 2003 audit, the record clearly evidences a large number of violations in the record-keeping practices of the Petitioner. Interpreting the results of the audit requires some difficult arithmetic.[2] The ATF agents initially noted a discrepancy of 813 between the number of open entries in the bound book and the number of guns in inventory at the store. The bound books showed 6,042 firearms that had been acquired but had no entry of disposition. Ideally, each of those 6,042 firearms should have been in the store's inventory and on the premises. Only 5,229 firearms were located in the store's inventory. Of those 813 unaccounted-for firearms, the agents located Forms 4473 for

---

[2]The pleadings, briefs, and exhibits in this case set forth a confusing array of changing numbers. ATF's Notice of Revocation charged Petitioner with failure to record the disposition of 677 firearms which were specified in an attachment to the Notice. The attachment, however, listed only 356 firearms. The Findings of ATF's Director of Industry Operations cites Petitioner for a failure to record 563 firearms. On careful examination of the record, the arithmetic begins to make sense.

133 that had been sold within the prior seven days and had not yet been entered into the bound book. This left 680 firearms unaccounted-for.

The ATF agents overcounted by three because of an error in their auditing practices. Agent Sharon Newkom testified that the reduction from 680 to 677 was made because there were three weapons found in inventory for which there appeared to be no acquisition listed in the bound book.[3] Petitioner was charged in Count III of the Notice of Revocation with failure to record the acquisition of the three firearms. The Hearing Officer and the DIO rejected this count, based on uncontested evidence that these three firearms were in fact in the bound book, but that ATF had failed to find them because it conducted its audit based on Petitioner's handwritten stock numbers rather than the serial numbers on the firearms. Serial numbers are stamped on each firearm by the manufacturer and are permanent. The stock numbers in this case were numbers assigned by Petitioner for its own record-keeping and were attached to the firearms on paper tags. The regulations require only that the serial number be recorded in the bound book. For each of the three firearms in question, one digit of the stock number was incorrectly recorded in the bound book. Although stock numbers used by a dealer have no legal significance, the ATF agents relied on them rather than on the serial numbers, apparently for their convenience. Further review of the A&D book showed that the three firearms in question were correctly recorded by serial number, as required by the regulations, and

---

[3]ATF's arithmetic is especially confusing here. If three of the firearms found in inventory were not even listed in the bound book as acquisitions, the discrepancy should have *increased* by three, rather than decreased. The three guns that were allegedly unlisted as acquisitions would have to be subtracted from the inventory for purposes of calculating the number of unaccounted-for open entries. Thus, of the 6,042 firearms acquisitions listed in the bound book as acquisitions with no disposition, there were only 5,226 guns found in inventory, for a difference of 816. Subtract the 133 recent firearm sales that were not yet recorded, and there would have been 683 firearms without proper disposition records.

ATF eventually conceded that it had failed to locate them because of its reliance on the stock numbers.[4]

Of the 677 missing firearms for which there was no recorded disposition in the A&D bound book, Petitioner contends that 321 firearms were later "cleared" or accounted for. A review of the record makes plain that 207 of these 321 "cleared" firearms were sold or transferred to other dealers, but Petitioner failed to record the disposition, in violation of the requirements of 27 C.F.R. § 478.125(e). Petitioner bases its argument that these 321 missing dispositions were "cleared" on a statement in the September 24, 2003 Report of Violations (Respondent's Ex. 1) that 356 of the 677 unrecorded firearms dispositions remained "unresolved."

That the other 321 unrecorded dispositions were "resolved" or "cleared" means only that the parties were able to discover what happened to the firearms, not that Petitioner had fully complied with its record-keeping obligations. Petitioner's Exhibit 24, a list of all 677 identified firearms prepared by Agent Newkam, shows how the parties were able to account for the 321 missing firearms. The far right column of the list has notes as to the status of each firearm after further investigation. 356 firearms remain listed as "missing," leaving 321 otherwise accounted for. Of these 321, it appears that 114 were found to be in the store's inventory or to be duplicate entries in the bound book. As for these 114 firearms, there was no violation, and the DIO took note of this discrepancy in reducing the number of violations from 677 to 563.

Subtracting the 114 firearms that were still in inventory from the 321 leaves 207. Of these, Petitioner located Forms 4473 for 157 firearms that had been sold but never logged out in the bound

---

[4] If the three firearms listed in Count III are considered to have been properly-recorded acquisitions that were still in the store's inventory, there remains a difference of 680 between the entries showing no disposition and the firearms in the store. Nevertheless, this Order will accept the arithmetic of the ATF and use the number 677.

A&D book.  For an additional 50 firearms Petitioner located commercial invoices showing that the firearms had been transferred to another licensed dealer, again without a corresponding record in the A&D book.  Although Petitioner was able to locate documentation of sale or transfer for those 207 firearms, the regulations require licensees to record all dispositions in the bound A&D book *and* to maintain the Forms 4473 or commercial invoices.  The fact that these dispositions were noted to be "resolved" by location of the forms or invoices means only that the firearms were ultimately accounted for.  It in no way implies that Petitioner fully complied with its obligations under 18 U.S.C. § 923 and its accompanying regulations.

Petitioner offers various arguments to account for the remaining 356 firearms shown as "missing" on Agent Newkam's worksheet, contending that most of the guns were stolen.  Petitioner admits that twelve of the firearms were sold but never logged off, and accounts for this failure by contending that they went unrecorded in the bound book because of "human error."  This human error resulted because each of the firearms was sold during a purchase of several guns by a single buyer.  In such cases, all of the firearms may be listed on a single Form 4473, and the list of firearms may continue to the back side of the form.  Petitioner contends that in these twelve instances, its employees simply failed to check the back side of the forms when logging dispositions into the A&D book.  Again, each such failure to record a disposition from a Form 4473 into the A&D book is a violation of the Gun Control Act.  Along with the twelve unrecorded dispositions, Petitioner identifies an additional eight firearms that were either in inventory, were duplicate entries, or were properly logged out.  Because these firearms were not transferred or disposed of, there was no violation.

Petitioner contends that the remaining 336 firearms were stolen. It is able to account specifically for 193 of these allegedly stolen firearms. The 193 appear to have been stolen during a major burglary of the store that took place in 1993, during which several hundred firearms were stolen.[5] After the burglary, Petitioner's owner and manager, Clarence Franklin, Jr., made a list of some of the firearms stolen.[6] After the 2003 audit, Petitioner located this list, which was stored somewhere near the bound A&D book. Petitioner was able to match 193 of the firearms on Mr. Franklin's list to the missing firearms on Agent Newkom's list. When these 193 firearms are subtracted from the list of "unresolved" dispositions, there remain 143 firearms for which there is no record of disposition in the A&D book and no Form 4473 in the file cabinets.

As to the remaining 143 missing firearms, Petitioner simply concludes that they were stolen based on its inability to account for their disposition. The Gun Control Act requires that all thefts be reported to ATF within 48 hours of discovery. 18 U.S.C. § 923(g)(6). Prior to the 2003 audit, Petitioner had no knowledge that the firearms were missing. Petitioner contends that it "discovered" the thefts of the 143 firearms during the audit, when it was unable to find any other explanation for their absence, and filed an inventory theft/loss report on September 25, 2003, the day after it received the report of violations from ATF.

Petitioner's contention that it cannot be held accountable for failure to record the disposition of these 143 allegedly-stolen firearms and the 207 unrecorded dispositions described above creates a paradox. On one hand, there are 143 firearms for which there is no Form 4473 showing sale and there is no entry of disposition in the bound book. Petitioner concludes that these firearms must have

---

[5] Investigator Mike Hardigree of the Athens-Clarke County Police Department testified that approximately 575 firearms were stolen in the burglary.

[6] Mr. Franklin died in August of 1998.

8

been stolen without its knowledge, and of course there is no way that Petitioner can be required to record a loss that it does not know about. On the other hand, there are 207 firearms for which there is a Form 4473 or invoice on record, but no entry of disposition in the bound book. Despite the omissions in the bound book, Petitioner contends that these firearms were "cleared" because Petitioner was able to account for their sale by finding the Form 4473. By such logic, no firearms dealer could ever be held to account for any failure of record keeping. If there is no Form 4473 and no disposition entry in the bound book, a dealer can simply assume that the firearm was stolen and that it had no ability or responsibility to record that theft in its A&D book. If there is a Form 4473, but no disposition entry, the dealer can say that the violation has been "cleared." This logic essentially nullifies the requirement of maintaining the A&D book.

At a minimum, the Court must find that the 207 missing dispositions that were "cleared" by the location of a Form 4473 or a commercial invoice were nevertheless violations of the requirements of 27 C.F.R. § 478.125(e). These violations were hardly de minimis. The regulation requires that the bound A&D book records be maintained *in addition to* the forms or invoices. The requirement of keeping accurate A&D records in the bound book is an important element of the Gun Control Act that makes it possible for licensees to respond quickly and accurately to tracing requests made in the course of criminal investigations. *See* 18 U.S.C. § 923(g)(7); Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 348 F.Supp.2d 1299, 1302 n. 2 (S.D.Ala.2004) *aff'd* 415 F.3d 1274 (11th Cir. 2005); RSM, Inc. v. Buckles, 254 F.3d 61, 63 (4th Cir. 2001). Information drawn from records kept by dealers is a "prime guarantee of the Act's effectiveness" in keeping firearms out of the hands of criminals, juveniles, and other dangerous persons. Huddleston v. United States, 415 U.S. 814, 825 (1974).

9

By neglecting to enter 207 dispositions in the A&D books, Petitioner failed to meet the requirements of the regulation. This noncompliance is not excused because Petitioner was able to trace the disposition of these firearms through subsequent investigation of its Form 4473 and commercial invoice records. In addition to the 207 "cleared" firearms that were sold but never logged out, there are the 12 missing firearms that Petitioner concedes were sold but not logged out, due to "human error." Accordingly, as to 219 firearms, the record shows beyond any genuine issue of material fact that Petitioner failed to meet its obligations under Section 478.125(e).

As to the allegedly stolen firearms, the Court extends to Petitioner the benefit of a doubt. The list created by Clarence Franklin, Jr., after the 1993 burglary indicates that Petitioner had knowledge of the theft of 193 firearms as early as 1993. These thefts were neither reported to ATF nor recorded in the A&D book until after the 2003 inspection. Although there is no explicit statement in the regulations that a theft is a disposition, the broad language of the regulation is enough to provide notice that a disposition entry should be made any time a firearm leaves the premises, including by theft. This is also plainly consistent with the purpose of the regulation, which is to allow easy monitoring of the location and movement of firearms. The 193 weapons stolen in the 1993 robbery should have been recorded in the A&D book. It is nonsensical to argue that placing a sheet of paper somewhere near the book, in a place where Petitioner was unable to locate it until days after the Report of Violation, constituted compliance with the regulations. Nevertheless, because Petitioner's failure to record the 193 thefts in its A&D book was a violation that occurred in 1993, the Court will not take this failure into account for purposes of this Order.

The loss of the other 143 firearms is more troubling. Even for a store with as large a volume of business as Petitioner's, the number is substantial. These firearms simply disappeared without

any notice until the audit, when Petitioner was unable to account for their absence. Prior to the audit, Petitioner would not have noticed the loss because Petitioner did not conduct regular inventory reviews.[7] Petitioner argues with some reason that it cannot be expected to have recorded or reported a theft that it did not know about; however, Petitioner merely assumes that the missing firearms were stolen because it is unable otherwise to account for their disposition. They may indeed have been stolen by shoplifters, or by employees, or by burglars. Or it is just as possible that they were sold and the employee making the sale neglected to complete a Form 4473. Such human error would be perfectly consistent with other record-keeping errors in this case, given the substantial number of times employees neglected to record a sale or transfer in the A&D book. There is no way to know at this point. In an excess of caution, the Court does not find, for purposes of this order, that the failure to record the disposition of the allegedly stolen firearms was a violation. Nevertheless, the failure to account for such a substantial number of missing firearms reinforces the overall impression of sloppy record-keeping and insufficient attention to detail that is especially troubling for a store with such a massive volume of sales.[8]

---

[7]There is no requirement in the Gun Control Act that firearms dealers conduct a regular inventory. ATF's Safety and Security Information manual (Petitioner's Exhibit 31) recommends that licensees conduct regular inventories to monitor losses:

> Regular and complete inventories enable an FFL to know which firearms have been transferred legally and which firearms may have been lost/stolen. The frequency of inventories may be dictated by the nature of the business, but at a minimum, an annual "floor to ceiling" inventory is recommended.

An earlier edition of the manual (Petitioner's Exhibit 11) also similarly recommended regular inventories for theft detection purposes. Petitioner conducted an inventory following the 2003 audit, but did not begin to conduct regular inventories until after the 2003 inspection. Even though there is no requirement for regular inventory control, Petitioner's refusal to conduct such an inventory at any time prior to the 2003 audit seems to be an indication of indifference to its obligations under the Gun Control Act. This lack of attention to inventory is particularly distressing for an operation that maintains an inventory of more than 6,000 firearms on its premises.

[8]During its first-ever regular inventory in 2004, Petitioner discovered another 181 firearms missing from inventory without record of disposition. It reported these firearms to ATF as stolen. Petitioner implies that these firearms were stolen prior to the 2003 audit but were "negligently overlooked" by the ATF. Petitioner's Response

### 4.     **Willfulness of violations**

Having found that the record plainly establishes violations of the record-keeping requirements of Section 478.125(e), the Court must next turn its attention to the question of whether the violations were willful.  The Gun Control Act authorizes the Attorney General to revoke a federal firearms license only for willful violations.  For purposes of revocation under Section 923, a violation is willful if the licensee "knew of his legal obligation and purposely disregarded or was plainly indifferent to the recordkeeping requirements."  Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 415 F.3d 1274, 1276 (11th Cir. 2005) ("Willingham Sports II").  A "bad purpose or evil motive is not required."  Id.  "Instead, the firearms dealer is considered to have acted willfully under § 923 if, with knowledge of what the regulations require, the dealer repeatedly violates these regulations."  Id.

In Willingham Sports, willfulness was shown by evidence that the owner of the business had knowledge of the federal regulations and that the business had been cited several times for violations.  The violations, as in this case, involved failure to record acquisitions and dispositions of firearms in the bound book.  The dealer was also charged with errors on Forms 4473.  The district court found that the evidence of willfulness was "overwhelming."  Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 348 F.Supp.2d 1299, 1310 (S.D.Ala. 2004) ("Willingham Sports I").  The Eleventh Circuit agreed.  The owner admitted that "he had received a number of governmental publications, including the Federal Firearms Regulations Guide, that explained the various regulations."  Willingham Sports II, 415 F.3d at 1277.  He also admitted he was aware that he held his license contingent on compliance with the regulations.  Uncontested evidence showed

---

Brief, Doc. 23, p. 17.  These missing firearms must also have been negligently overlooked by Petitioner during its post-audit inventory in 2003.  It is also possible that they were lost between 2003 and 2004.

that "during four different ATF inspections over the fourteen years Willingham Sports held a firearms dealer license, numerous recordkeeping errors and other violations of the federal regulations were uncovered." Id. at 1276.  Following one of those investigations, the company received a warning letter from the ATF advising it that repeated violations could result in revocation of the license.

The facts of this case are comparable to Willingham Sports.  Like Mr. Willingham, Barbara Franklin testified that she was aware of the requirement that dispositions be recorded in the bound book within seven days of the disposition.  Petitioner had previously been audited and cited for the same or similar violations in 1993 and 1998.  After the 1993 audit, Petitioner received a Report of Violations citing it for failure to record the disposition of 279 firearms in the A&D book.  After the 1998 audit, Petitioner received a Report of Violations citing Petitioner for failure to record the disposition of 243 firearms and the acquisition of 15 firearms in the A&D bound book.  On March 17, 1998, ATF mailed a letter to Petitioner to remind it that its license was conditioned upon compliance with federal firearms laws and regulations.  The letter specifically cited 27 C.F.R. § 178.125(e)[9] and the requirement that acquisitions and dispositions be recorded in the bound book. Petitioner was warned that repeat violations of those regulations would be viewed as willful and could result in the revocation of the firearms license.

Other courts have found that one or two prior citations by ATF may be sufficient to establish the willfulness of a subsequent violation.  For example, in Lewin v. Blumenthal, 590 F.2d 268 (8th Cir. 1979), there was a single inspection prior to the final inspection that resulted in the non-renewal of the petitioners' license.  The first inspection was conducted in 1974 and an administrative hearing

---

[9] 27 C.F.R. § 178.125 was subsequently renumbered 27 C.F.R. § 478.125.

was conducted in 1975. The hearing disclosed a "large number of violations," including failure to keep proper records. Id. at 269. The court found that a careful review of the evidence from that hearing alone "could only lead one to the conclusion that the [petitioners] were indifferent to the requirements of the law." Id. ATF conducted a subsequent inspection in 1977, which disclosed evidence of further violations. Based on the number of violations in the first inspection and the continued violations in the second inspection, the court held that there was sufficient evidence of willfulness to justify a refusal to renew the petitioners' license.

In 3 Bridges, Inc. v. United States, 216 F.Supp.2d 655 (E.D.Ky. 2002), the district court noted that one of two prior inspections had resulted in citations for violations similar to the ones that resulted in the revocation of the petitioner's license, including failure to maintain proper A&D records. The court noted that the petitioner was well aware of the requirements of the law based on ten years experience in the business and possession of ATF compliance manuals. After the first inspection, the petitioner was warned of his violations and given instruction in compliance. The court found that the violations uncovered in the third inspection were willful and sufficient to justify the revocation of the petitioner's license.

In In re Revocation of Federal Firearms License Held by Sullivan, 432 F.Supp.2d 574 (E.D.N.C. 2006), the court found that a violation was willful without reference to prior violations. Petitioner in Sullivan applied for a federal firearms license in 2001. At the time he applied for his license, Petitioner met with ATF agents, who explained to him ATF's rules and procedures. An inspection conducted in 2004 resulted in citation for failure to record acquisitions of 27 firearms, failure to record dispositions of 42 firearms, failure to conduct required background checks on 19 occasions, and failure to report multiple sales on three occasions. The court noted that the first of

the violations occurred less than one month after the petitioner's meeting with ATF agents. It held that there was evidence of willfulness where the petitioner "received an explanation of the requirements for the operation of a firearm distributor, but nevertheless repeatedly violated these requirements." Id. at 577.

These three cases illustrate are consistent with the broader body of case law on the question of willfulness in the context of license revocation under the Gun Control Act. In these cases, the primary significance of prior citations is the notice that they give to the licensees of their responsibilities under the Act. In many of the cases, the prior citations were for similar violations, so that the licensees had notice not only of their general obligations, but also of the specific provisions that led to the ultimate revocation.

Petitioner contests the Attorney General's finding of willfulness by challenging the validity of the 1993 and 1998 audits. Petitioner contends that the 1993 audit was invalid because it was conducted on the day after the 1993 burglary and because Petitioner was not given the opportunity to respond to the charges. The 1993 audit was not relied upon by the hearing officer or the DIO in arriving at the finding of willfulness, and Respondent appears to have conceded that it is not probative.[10] On de novo review, however, the Court is not bound by the findings of the hearing officer or the DIO. Although the circumstances of the 1993 audit raise questions about the accuracy of its conclusions, the Report of Violations remains relevant as evidence that Petitioner had knowledge of its obligations under the Gun Control Act. The 1993 Report of Violations alleges the

---

[10] A statement by Respondent's counsel during the Court's July 11, 2006 hearing on the motions for summary judgment suggests that the 1993 inspection may have been worthy of more credit than the hearing officer gave it. For reasons unknown to the Court, Respondent elected not to enter into the record any evidence to support the findings of the 1993 audit, and the Court considers it relevant only to the extent that it gave notice to Petitioner of its responsibilities with regard to the A&D book.

same violations that are the basis of the 1998 and 2003 charges. After all three audits, Petitioner was charged with failure to record hundreds of dispositions in the A&D book. As a result, Petitioner was on notice as early as 1993 that it was obligated to record dispositions in the A&D book *in addition to* the Forms 4473.

The record is sparse as to the 1998 audit, and there remain issues of fact concerning the extent of the violation. The only evidence in the record comes from the testimony of Barbara Franklin and from the correspondence between ATF and petitioner around the time of the audit. Barbara Franklin seems to have testified[11] that 248 of the 263 firearms cited for missing dispositions were later located in the store's gunsmithing area. After Petitioner received the report of violation in February of 1998, Mark Franklin, son of Clarence and Barbara Franklin and Petitioner's Vice President, wrote a response which states:

> 248 gunsmithing acquisitions have been cleared – a physical inventory has been completed and customers notified. 15 retail guns have been reconciled either as duplicate entries or simple omissions. All paperwork has been reconciled.

Respondent's Exhibit 17. Mark Franklin did not testify in the administrative hearing. Nowhere in his response to the report does Mr. Franklin state that the firearms were physically found in the inventory. Instead he states only that they were "cleared." As noted above in reference to the 207 unrecorded dispositions, "cleared" is an ambiguous term in Petitioner's vocabulary.

Mr. Franklin's written response to the report acknowledges that at least some of the missing disposition records were the result of "simple omissions" (i.e. "human error"). Regarding the cited failures to record acquisitions, Mr. Franklin writes that he had taken corrective action by recording or locating the unrecorded firearms. Such corrective action would not have been necessary if there

---

[11] Her testimony is not entirely clear on the point.

had not been a lack of compliance in the first instance.  Based on Mr. Franklin's written admissions, the Court must infer that at least some of the firearm acquisitions were indeed unrecorded prior to his corrective action.   Undisputed evidence in the record therefore shows that Petitioner was guilty of at least a portion of the charged violations in 1998.

As with the 1993 citation, the most significant impact of the 1998 Report of Violation and the subsequent warning letter was to give Petitioner clear notice that there were possible deficiencies in its record-keeping procedures and that it would have to undertake greater care to maintain compliance with the regulations.  After two inspections, two citations, and one warning, Petitioner had more than adequate notice of its duty to record dispositions in the A&D book.  Petitioner was cited in 1993 and 1998 for the same violations discovered in the 2003 audit – failure to record acquisitions and dispositions in the bound book.  Petitioner was warned in 1998 that further violations of these regulations would be considered willful and could result in revocation of its license.

Given the scope of the violations found in the 2003 audit, involving hundreds of firearms, it is apparent that Petitioner did not take this warning seriously.  Indeed, Petitioner's confusion about the 207 unrecorded dispositions suggests that it still fails to appreciate that the regulations require that all dispositions be logged into the A&D book regardless of whether a Form 4473 is on file, and fails to appreciate that this is an important requirement that cannot be ignored.  With two prior warnings from ATF, with thirty years of experience as a firearms dealer, and with an annual sales volume of thousands of weapons, Petitioner has no excuse for the sort of sloppy record-keeping revealed in the record of this case.

The strict record-keeping requirements of the Gun Control Act display a sense that the sale of firearms is a serious business that requires diligence of firearms dealers. Such diligence is especially required of huge operations such as Petitioner's, which acquired more than 95,000 firearms over a thirteen-year period. It is not acceptable for hundreds of firearms to be sold or transferred without proper documentation, and it is clear that Petitioner was aware this degree of non-compliance was unacceptable. Accordingly, the Court concludes that Petitioner's violations were willful and that the Attorney General was authorized to revoke Petitioner's firearms license under 18 U.S.C. § 923(e).

**SO ORDERED** this <u>8th</u> day of August, 2006.

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL
United States District Judge